## HARTLEY *v.* NASH, commissioner.

Interest upon a valid subsisting obligation of a county is of the same nature as the principal, and is collectible upon the same terms and in the same manner as the principal.

No. 3754. JANUARY 24, 1924.

Petition for mandamus. Before Judge Hutcheson. DeKalb superior court. March 31, 1923.

Hartley filed his petition for mandamus, alleging in substance as follows: Nash, the defendant, is sole commissioner of roads and revenues for said county, duly elected to office. Petitioner is a bona fide holder of six county warrants drawn by R. J. Freeman, former commissioner of roads and revenues of DeKalb County, the numbers, amounts, dates, and parties to whom payable being set out, and it being alleged that each warrant was properly indorsed to Hartley, a copy of one warrant being attached to the petition, and it being alleged that all of the other warrants are of the same tenor and effect except as to numbers, payees, dates, and amounts; that each of said warrants was lawfully issued in payment of supplies and materials furnished to and accepted and used by said county; that each of said warrants was presented to the county treasurer for payment, and was indorsed, showing non-payment for lack of funds. Paragraph seven of the petition was amended to show payment in full of each of the warrants, unless the court should hold that they bear interest, the entire principal having been paid by a tax levy for that purpose as provided by section 507 of the Code of Georgia. No part of the principal sum is in dispute. It is alleged that said warrants draw interest at seven per cent. per annum on the full amount of the principal from the date of the demand upon the treasurer of the county until the date when the first installment of principal was paid, and from that date on the balance of the principal until payment of the next installment of principal, and so on, the amount of interest claimed to be reduced by the payment of each

installment; that demand has been made upon the treasurer of DeKalb County for the interest on each of said warrants, but he refuses to pay said interest and declines to recognize any valid claim for interest on the warrants; and that the commissioner of roads and revenues has failed and refused to make any provision for the payment of interest on said warrants; that there is not now in the hands of the treasurer of DeKalb County a fund from which said interest can be paid, and no provision has been made for the levy of any tax for that purpose, and the treasurer will remain unable to pay any part of said interest until some tax has been levied by the proper authorities to provide for the payment of the same.

All the allegations of Hartley's petition were admitted by the defendant, except that he denied that said warrants bear interest or can lawfully bear interest. For further answer the defendant showed that when he came into office his predecessor left outstanding warrants approximating $309,000, and he says that if the warrants sued on bear interest, all of the warrants unpaid when he came into office will bear interest. The defendant also demurred to the petition, on the ground that it sets forth no cause of action and that it shows on its face that it is brought for the purpose of requiring the defendant as commissioner of roads and revenues to levy a tax to pay said interest; and he says that there is no authority of law for him to levy a tax for this purpose, because to allow and require the payment of interest on said warrants would create a debt against the county, in violation of paragraph one, section 7, article 7 of the constitution of Georgia; it nowhere appearing in the petition that the principal indebtedness on which this interest is claimed was to supply a casual deficiency of revenue, or had been assented to by two thirds of the qualified voters of the County of DeKalb at an election for that purpose.

The court sustained the demurrer, dismissed the petition, and denied a mandamus absolute, holding that the questions involved had been settled by previous decisions of this court. To this ruling the plaintiff excepted.

*Jones, Evins & Moore, W. A. Sutherland, C. M. Candler, Scott Candler,* and *Hewlett A. Hall,* for plaintiff.

*J. Howell Green* and *L. J. Steele,* for defendant.

RUSSELL, C. J. (After stating the foregoing facts.) There is but one question presented by the record in this case. Is a county liable as any other individual would be for the payment of interest upon a valid obligation of this municipal subdivision? Or, to state the question in another form, is there any reason why the provisions of § 3434 of the Civil Code of 1910 should rest less heavily upon either the State or any subdivision of the government than it should lie upon an individual? The writer has already expressed his view upon this subject in the case of *Citizens Bank of Moultrie* v. *Rockdale County*, 156 *Ga.* 500 (119 S. E. 322), and given his conscientious opinion that common honesty and good morals apply as much to any branch or subdivision of the government as to private individuals. It is practically conceded in this case that the principal of the debt here involved was a valid obligation of the County of DeKalb. Of course this court cannot assume that to be the law merely from the fact that in the particular case the county might be estopped by reason of its conduct. But we think that it is perfectly well settled that the interest is as much a part of any debt as is the principal. *Epping* v. *Columbus*, 117 *Ga.* 263, 276 (43 S. E. 803); *Park* v. *Candler*, 114 *Ga.* 466 (40 S. E. 523). The interest follows the principal and is in the same classification; and if the principal is a valid obligation, then necessarily that portion of the debt usually denominated as interest must likewise be valid and binding.

We are requested (if it should be deemed necessary) to review and overrule the previous decisions of this court in the cases of *Lettice* v. *American National Bank*, 133 *Ga.* 874 (67 S. E. 187), *First National Bank of Rome* v. *Owens*, 147 *Ga.* 599 (95 S. E. 2), and *Tift & Peed Grocery Co.* v. *Worth County*, 150 *Ga.* 319 (103 S. E. 465). For the preservation of orderly procedure and in order that there may be uniformity of decisions, the doctrine of stare decisis is entitled to due observance, as recognized by all courts; and yet if the cases cited ought to be overruled, so far as the writer is concerned, we would not hesitate to overrule them. It is true that the experience of ages has established that the rule of stare decisis within reasonable limitations is a most salutary guide,—at once the compass and the (steering-wheel) rudder of the pilot whose duty it is to guide the ship of law in the safest channels and away from rocks and reefs, and thus mark the only

safe passageway for all others,—whether they "go down to sea in ships" of literature or commerce, and whether the passengers be absorbed in harassing business or only idly intent on luxurious pleasure. All citizens are mariners on the sea of life. The ships of law cannot pursue a zigzag course without imperiling the safety of all mariners, for they must follow the course defined; and ordinary seamen, lacking both the skill and the authority of the pilots, have the right to expect safety for themselves and cargo as long as they follow closely in the wake of their pilot in the charted channel. In numbers of decisions of this court the rule of stare decisis has been upheld and applied (and especially on the ground of public policy, where large numbers of transactions covering a long period of years would probably be disturbed or vitiated, and the rights of those who had followed the law as authoritatively expounded would be adversely affected or destroyed by a different exposition). This is one reason why the rule of stare decisis must ordinarily be applied and strictly followed. However, as said by Chief Justice Bleckley in the case of *City of Atlanta* v. *First Pres. Church,* 86 *Ga.* 730, 733 (13 S. E. 252, 12 L. R. A. 852), "Courts, like individuals, but with more caution and deliberation, must sometimes reconsider what has already been carefully considered, and rectify their own mistakes. If this is to be done in any case, it would seem to be a case like the present, where a change of decision would uproot no transaction founded on the prior decision, and where the effect in the particular controversy at the bar would be simply to leave the parties where they had placed themselves by doing aright what one of them now seeks to have undone." However, after a careful examination of the previous decisions of this court, the question in this case does not appear to have ever been distinctly adjudicated, and the answer to the question, in our opinion, is free from difficulty.

The decisions in the *Lettice* and the *First National Bank* cases, supra, are mere headnotes, and in the case last mentioned the opinion was rendered by only five Justices. Therefore it would not be necessary to overrule that case. Besides this, in the case of *State* v. *Speer,* 33 *Ga. Supp.* 93, it was distinctly held by this court that counties in this State are liable for interest upon their debts. This is the oldest decision of this court upon this question, and under ordinary juridical rules must stand as authority until

overruled and reversed. If it be said that this decision was prior to the adoption of the constitution of 1877, it can be replied that there is nothing in the constitution of 1877 which abrogates or supplants the decision of this court in the *Speer* case.

We think it unnecessary to overrule any one of the cases referred to, because in our opinion there is nothing in either one of them which requires the court to disregard the ruling in *State* v. *Speer*, which is the oldest case. The holding in the *Lettice* case amounts to nothing more than a ruling that interest cannot be collected on a debt when the principal represents an invalid obligation. The ruling in that case is sound on principle and the authorities above cited, to the effect that the interest follows the principal and with its accretion gradually becomes a part of the debt. Of course an invalid debt cannot produce valid interest. Certainly nothing said in that case concerns the proposition where the question is raised that interest cannot be collected upon even a valid debt. In the case of *First National Bank* v. *Owens,* supra, which is based entirely upon the *Lettice* case, and where, as in the case at bar, the principal had been paid and payment of the interest only was refused, the court, we think mistakenly, followed the decision in the *Lettice* case, which was really based entirely upon the fact that the original debt was invalid. The *First National Bank* case, however, as previously stated, should not be binding, because it is the judgment of only five Justices, and not the opinion of a full bench of six.

In *Tift & Peed Grocery Co.* v. *Worth County,* supra, the decision is based upon the principle that the interest partakes of the nature of the principal, and the court dwells upon the term "new debt," quoting from the decision in the case of *Park* v. *Candler,* supra. It cannot be held that interest upon an existing debt is a new debt, for it is simply a consequence of an old debt already existing (*Epping* v. *Columbus,* 117 *Ga.* 263, 276, supra). And it can safely be said that every liability which a county may legally incur without violating the constitutional prohibition against the creation of a debt may legally bear interest, and that such interest accruing upon such principal liability will not be obnoxious to the constitutional prohibition against the creation or incurring of a new debt. So we are of the opinion that nothing ruled in any of the three cases cited prevents us from now deciding that inter-

est upon a valid debt of a county is as binding as the principal and can be collected if the principal is collectible.

On July 24, 1920, the General Assembly passed an act (Acts 1920, p. 65) expressly providing that all county warrants lawfully issued in the future should bear interest at the legal rate. Of course this act is in no way binding upon this court, since the obligation upon which the alleged past-due interest is sought to be recovered in the present case antedated that act. But the enactment of this law may be considered as indicating the understanding of the General Assembly as to the true law and as a reaffirmation of the doctrine stated in the *Speer* case, supra, and in view of this expression of the opinion of the legislature, it is our opinion that this court should be compelled and forced to the conclusion that the constitution forbids the payment of interest in a case like this, or else resolve any doubts upon that subject in favor of its constitutionality. "Mere doubt as to the constitutionality of a particular enactment settles its validity." *Heard* v. *State,* 113 *Ga.* 444, 447 (39 S. E. 118) ; *Cone* v. *American Surety Co.,* 154 *Ga.* 849 (115 S. E. 481).

We think the trial judge erred in refusing to issue the mandamus prayed for; and accordingly the judgment of the lower court must be            *Reversed.  All the Justices concur, except*

Beck, P. J., and Hill, J., dissenting.  Being of the opinion that the county warrants under consideration in this case do not bear interest, we dissent from the ruling of the majority.  The cases of *Lettice* v. *American National Bank,* 133 *Ga.* 874, *First National Bank of Rome* v. *Owens,* 147 *Ga.* 599, and *Tift & Peed Grocery Co.* v. *Worth County,* 150 *Ga.* 319 (supra), require a different conclusion from that announced.  Those cases are binding until reviewed and overruled.  We do not think that the distinction drawn between the cases cited and the instant case is sound.  The statement of facts in the *Lettice* case, supra, as set out in the official report, does not develop all the facts, but an examination of the record in that case will show that the question as to whether county warrants draw interest was squarely presented, and the judgment of reversal of the court below was an unqualified ruling that they did not bear interest.